ELISHA S. HALL, assignee, *vs.* JACOB M. HASKELL & others.

Franklin.    September 21, 1897. — October 20, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Insolvent Debtor — Finding — Payment — Preference.*

If a debtor sells his stock of goods and receives from the purchaser some money, a
promissory note, and an order for a certain sum drawn in favor of a creditor
and accepted by the purchaser, and the order is at once delivered to the cred-
itor, who credits the amount on the account which the debtor owes to him, a
finding that the order was given as and for a payment at the time will be war-
ranted in an action by the assignee in insolvency of the debtor's estate to re-
cover the amount from the creditor, and such payment, being made within six
months before the filing of the petition in insolvency, is a "preference" under
Pub. Sts. c. 157, § 96.

CONTRACT, or tort, under Pub. Sts. c. 157, § 96, by the assignee
of the estate of George M. Underwood, in insolvency, to recover
$400, alleged to have been received as an unlawful preference
by the defendants from the debtor within six months before the
filing of the petition in insolvency. Trial in the Superior Court,
without a jury, before *Bishop*, J., who allowed a bill of excep-
tions, in substance as follows.

There was evidence tending to show that, on December 3,
1895, Underwood, who was the proprietor of a retail grocery in
Orange, was insolvent, and was indebted to the defendants in
the sum of $575 upon an open account for merchandise, and the
defendants knew that he was insolvent; and that on that day
one Brackett, a salesman and collector of the defendants, who
had been employed by Underwood to sell out his stock in trade
and business in Orange, sold said stock in trade and business to
George R. Paige for $3,100.

Brackett had been in the defendants' employ for many years,
and was a travelling salesman and collector, and had from time
to time visited Underwood at his store, made sales to him and
collections from him, and was acquainted with the condition of
his business. At Underwood's request, he had been looking for
some time to find a customer to buy Underwood out. Finally
he found Paige, who was willing to buy, and it was agreed that

he should purchase the stock of goods at an appraisal to be mutually made by Underwood and Paige with the assistance of Brackett; that out of the proceeds the defendants should be paid $400 on account of Underwood's indebtedness to them, then amounting to $573.13; that Brackett should be paid $200 as a commission for negotiating the sale; and that the sale should be for cash in a few days, except a mortgage upon the stock for $1,000 which Paige assumed, Paige testifying that he only wanted time to "turn round" and go to Bernardston, where he lived, not having all the ready money with him at Orange.

The appraisal was made by the parties as agreed, and amounted to $3,100. On December 3, 1895, a conveyance and delivery of the stock of goods were made by Underwood to Paige, the latter paid Underwood $250 in cash, assumed the mortgage, gave Underwood a note or memorandum for $1,250 payable on five days' time, an order was drawn by Underwood on Paige for $400 payable to the defendants, which Paige accepted, and a like order drawn by Underwood on Paige for $200 payable to Brackett was likewise accepted. Brackett transmitted or gave the order for $400 to the defendants, and they received it and credited the amount upon their account with Underwood in their books on December 5, 1895. Underwood, Paige, and Brackett were together at the store in Orange when the appraisal, transfer of the property, and delivery of the papers as above stated took place.

On January 24, 1896, the debtor's petition was filed; the warrant issued on January 25, and the first publication was on January 28, 1896.

The plaintiff, upon being appointed assignee, brought suit against Paige, claiming to recover the amount agreed to be paid by him for the stock of goods, or their value. This suit was pending until a short time before August, 1896, and then resulted in a judgment against the plaintiff. Paige testified that, on account of the pendency of that suit, he did not pay the defendants the amount of the order for $400 until after the suit was disposed of, but the same was in fact paid in August, 1896.

At the first meeting in insolvency, on February 7, 1896, the defendants offered for proof against Underwood's estate a claim for $173.13, duly sworn to by them, the same being the balance

of the account of $573.13 due them from Underwood as above stated, with a credit under date of December 5, 1895, " By acceptance of George R. Paige $400," leaving said balance of $173.13.

The defendants contended that, as matter of law, the payment received by them was made by Paige as a surety or guarantor for the insolvent, and not by the insolvent himself, and was made after the first publication of the warrant in insolvency.

At the close of the evidence, the defendants requested the judge to rule as follows:

" 1. The plaintiff's right to recover in this action is limited to a payment by the debtor before the first publication of the warrant in insolvency.　2. The plaintiff's right to recover in this action is limited to a payment by the debtor of money before the first publication of the warrant in insolvency.　3. The plaintiff cannot recover a payment made after the first publication of the warrant in insolvency.　4. The plaintiff cannot recover a payment made after the first publication of the warrant in insolvency by an acceptor of the insolvent's draft made and accepted before the first publication.　5. The giving of the draft or order by the insolvent was not a payment, and therefore cannot be recovered.　6. The giving of the draft or order by the insolvent was a payment, and extinguished the defendants' claim to that amount [and the subsequent payment by the acceptor or surety was not a payment on account of the original debt, as alleged, and the plaintiff cannot recover].　7. It was not a preference for the defendants to receive money in payment of a draft or order from a surety, guarantee, or acceptor of commercial paper of the insolvent who had incurred a legal liability to pay the same, even if the surety, guarantee, indorser, or acceptor had security of the insolvent for his obligation.　8. It is no objection to the conduct of the defendants that they obtained an order or draft of the insolvent on a third party and obtained the third party's acceptance thereof before the first publication of the warrant in insolvency, and the payment thereof by the acceptor after the first publication of the warrant, and the mere fact that the acceptor had security, does not make the defendants' conduct objectionable."

The judge gave the first ruling requested; gave the second

·ruling requested, with the addition, after the word "money," of the words "or the equivalent of money accepted by the creditor as such"; gave the third ruling requested; and, instead of the fourth ruling requested, ruled as follows: "Although the order was paid by Paige after the first publication of the warrant in insolvency, yet the plaintiff can recover if, when the defendants took it, they accepted and received it as cash and in payment of so much of the insolvent's debt, and credited it as such"; declined to give the fifth request; gave so much of the sixth as is not included in brackets, and declined to give the portion in brackets; and also declined to give the seventh and eighth requests, as not called for by or applicable to the facts in the case.

The judge found as a fact, from the evidence, that the order for $400 was given and received as and for a payment at the time of that sum of money by Underwood to the defendants, and was so credited by the defendants; and that it was a payment and discharge made at the time of that amount of his indebtedness to them; and ordered judgment for the plaintiff.

The defendants alleged exceptions.

*G. C. Abbott & S. H. Tyng,* for the defendants.

*E. S. Hall, pro se.*

BARKER, J. On December 3, 1895, the debtor, owing the defendants, sold his stock of goods and received in payment from the purchaser some cash, the assumption of a mortgage, a promissory note, and an order for the sum of $400 drawn in favor of the defendants and accepted by the purchaser. The cash, the note, and the order were then the property of the debtor. The order was on the same day taken by the defendants' agent and was delivered by him to them, and was credited by them to the debtor as a payment upon the account which he owed to the defendants.

It was competent for the presiding justice to find, as he did, that the order was given as and for a payment at the time. By this payment the order, which was the debtor's property, was transferred to the defendants in preference, and the rulings refused were upon this state of facts immaterial.

*Exceptions overruled.*